

**ORDERED in the Southern District of Florida on October 04, 2010.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In re:                                                      CASE NO. 09-26712-BKC-AJC

EDUARDO VALDES,

        Debtor.
_____/

### ORDER DENYING CONFIRMATION
### AND GRANTING LEAVE TO DEBTOR TO FILE AMENDED PLAN
### TO AVOID DISMISSAL

THIS CAUSE came before the Court for hearing on July 20, 2010 upon confirmation of the Fifth Amended Plan [DE 133]. The Trustee and Debtor's secured creditors objected to the plan's proposed treatment of the Creditor. The Court took the objections under advisement and requested the submission of memoranda of law and proposed orders supporting the parties' respective positions. The Court, having reviewed the submissions and the record in its entirety, sustains the objections.

### Undisputed Facts

Eduardo Valdes ("Valdes") filed a voluntary petition under Chapter 13 on August 12,

2009.  Valdes holds an interest in properties located at 14231 Boggs Drive, Miami, Florida ("Boggs Property") and at 14235 SW 109th Place, Miami, Florida ("109th Property").  Neither the Boggs Property nor the 109th Property are the Debtor's principle residence.

Carrington Mortgage Services ("CMS") holds a lien on the Boggs Property.  CMS filed a proof of claim [Claim #4] asserting a principal balance of $211,295.94 at 6.5% interest and an arrearage of $6,846.39 with a regular payment of $1,733.61.  Valdes filed a motion to value the Boggs Property.  CMS and Valdes agreed that CMS's lien is secured in the amount of $95,846.83. [DE 62].

BAC Home Loans Servicing ("BAC") holds a lien on the 109th Property. BAC filed a proof of claim [Claim #7] asserting a principal balance of $175,369.89 at 6.125% and an arrearage of $1,118.00 with a regular payment of $1,118.00 per month.  Valdes filed a motion to value the 109th Property.  BAC and Valdes agreed that BAC's lien was secured in the amount of $115,000.00 at 5.5% interest [DE #130].

Valdes proposed a plan which provides for partial payment of the liens held by BAC and CMS and proposes to issue a new note to pay the balance of the claims.

BAC (identified as Countrywide on the plan) would receive payments of $672.28 per month for thirty six (36) months or a total payment of $24,202.08 through the plan.  The plan further provides for the following: "Distribution of Property: a 25 year fixed rate promissory note in the amount of the allowed secured claim in the amount of $115,000.00 at 5% interest in the form of the note and attached hereto as Exhibit A" to pay the balance of the claim.  In addition, the plan states "Note to be Distributed on the Effective Date of the Plan."  There is no note attached to the plan as Exhibit A.

CMS (identified on the plan as Deutsche Bank) would receive payments of $588.58 per

month for thirty six (36) months or a total payment of $21,188.88 through the plan.  The plan further provides for the following: "Distribution of Property: a 25 year fixed rate promissory note in the amount of the allowed secured claim in the amount of $95,846.83 at 5.5% interest in the form of the note, attached hereto as Exhibit A" to pay the balance of the claim.  In addition, the plan states "Note to be Distributed on the Effective Date of the Plan".  There is no note attached to the plan as Exhibit A.

CMS filed an objection to confirmation [DE 35] on October 21, 2009.  BAC filed an objection to confirmation [DE 132] on July 17, 2010.  The Trustee has filed several Notices of Deficiencies, and it now appears the Debtor has amended his plan once again.  Debtor has filed a Sixth Amended Chapter 13 Plan since the hearing.  It appears in the Sixth Amended Chapter 13 Plan that the Debtor is surrendering the property of CMS but is treating BAC the same as in the Fifth Amended Chapter 13 Plan.  Thus, the Court will address the issues raised by the objections to confirmation of the prior plan as even this newly amended plan proposes to modify a lien and distribute a long-term note on account of the claim.  The creditors and Trustee object to the Debtor's proposal to satisfy their claims by creating new promissory notes to be paid over 25 years, at an interest rate of 5.5%.  Although the creditors agreed to the value of their respective secured claims under 11 U.S.C. §506, the creditors object to the 25 year payment period, arguing that such period exceeds the duration of Debtor's plan in violation of the Bankruptcy Code.

## Issues

There is no controversy regarding a debtor's right to satisfy a secured claim that is not secured by a principal residence under 11 U.S.C. §1325(a)(5)(B) or to cure the arrearage and maintain payments pursuant to 11 U.S.C. §1322(b)(5).  *In re Santiago*, Case No 08-15360-BKC-LMI (Bankr. S.D. Fla. Oct. 29, 2009).  As explained in Chapter 13 Bankruptcy, 4th Edition:

> "[W]hen an undersecured mortgage can be bifurcated under § 506(a), the extent of the allowed secured claim will be limited by the value of the collateral, and thus the extent of the mortgage holder's lien rights will be limited to repayment of the allowed secured claim. If the debtor is financially able to pay the allowed secured portion of the claim in full during the plan consistent with § 1325(a)(5), then at the completion of payments the mortgage will be discharged. Even if the debtor is only financially able to cure default and maintain payments during the life of the plan with respect to the secured portion of the undersecured mortgage, in the long run, the rights of the lienholder will be retired upon payment of a smaller amount than the original mortgage contract would have required." Keith M. Lundin & William H. Brown, <u>Chapter 13 Bankruptcy, 4th Edition</u>, § 128.2, at ¶ 6, Sec. Rev. June 14, 2004, www.Ch13online.com

The controversy arises from Debtor's proposal to provide to the secured creditors a partial payment in the plan and a new promissory note [to be paid long after the plan is completed]. The Debtor asserts the note constitutes "property" distributed under the plan, and that "nothing in §1325 suggests that property is limited to cash. Rather, property can be cash, notes, stock, personal property or real property; in short, anything of value." *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) (citing Justice Thomas' concurring opinion).

The Trustee and creditors argue that all secured liens must be treated in one of only three ways under Chapter 13 of the Bankruptcy Code. First, a debtor may surrender the property securing the lien under 11 U.S.C. §1325(a)(5)(C). Second, the debtor and lienholder can agree to debtor's proposed treatment of the lien under the plan pursuant to 11 U.S.C. §1325(a)(5)(A). Third, a debtor may distribute value under the plan that is not less than the allowed amount of the claim. 11 U.S.C. §1325(a)(5)(B). Alternatively, the debtor may cure a default under the plan and maintain payments while the case is pending. 11 U.S.C. §1322(b)(5). The objecting parties contend that the distribution of a note under the plan, with payments that exceed the five year limitation of a Chapter 13 plan, violates the provisions of the Bankruptcy Code. The Court agrees. The Debtor's interpretation would allow a Chapter 13 debtor to cram down the claim of

a secured creditor of the principal amount of the creditor's lien, at a reduced interest rate - which rate is lowered under *Till* based upon the increased assurance of payment under a plan - and, then replace the less risky payment scheme under a plan with a promissory note to the creditor to be paid over a lengthy period of time exceeding the plan terms. This is not what is contemplated under the Code.

## Analysis

Section 1322(b)(5) of the Bankruptcy Code provides, in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, the plan may …
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Courts have found that, in accordance with the statute, a change in the amount of the monthly payments does not constitute "maintenance of payments." *In re McGregor*, 172 B.R. 718 (Bankr. D.Mass. 1994). The phrase "maintenance of payments connotes an absence of change." *Id.* at 721. The court in *McGregor* stated that "[i]f the payments are changed, sections 1322(c) and 1325(a)(5) both require that they be completed over the life of the plan, which cannot exceed five years." *Id*. Otherwise, debtors may take advantage of 11 U.S.C. §1322(b)(5) by paying the contractual interest rate and contractual amount of principal and interest "during the life of the plan and such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by th[e] court." *Id*. Similarly, the court in *In re Pruett*, 178 B.R. 7, 9 (Bankr. N.D. Ala. 1995) agreed with the reasoning in *McGregor,* finding that, in the event a debtor changes the interest rate and the amount of the monthly payments, as he may choose to do, the debtor is required to pay the amount of the allowed secured claim within the five-year-period of the plan. *Id*. at 9.

This Court agrees with the reasoning in *Santiago*, Case Number 08-153600-BKC-LMI. The court in *Santiago* determined that debtors may modify the payment terms of a note, in which case all payments must be completed during the duration of the plan, or "Debtors may continue (maintain) payments under the Note and make 'the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by th[e] court.' " *Id*. at 721.

A debtor may not use §506(a) in combination with §1322(b)(5) to reduce the secured claim and repay the claim over a period exceeding the plan. *In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004). Section 1322(b)(2) does not allow a modified secured debt to be paid over a period of time longer than the plan terms, and the debtors' proposed plan modification must be disallowed. *Id*.

Debtor argues that a new note provided to the lender constitutes property pursuant to §1325(a)(5)(B)(ii). The court in *Santiago* addressed that argument and recognized that "property" for purposes of §1325 may include "cash, notes, stock, personal property or real property, in short, anything of value," but the court further stated that a debtor cannot distribute such property over a period of time which exceeds the duration of the plan. *Santiago*, Case Number 08-153600-BKC-LMI. Valdez's plan does not maintain the regular payment nor does the plan distribute the value of the lien to the creditors under the five year plan term. The Court finds that, absent consent from a creditor, a secured lien which is valued pursuant to 11 U.S.C. §506 must be paid in full over the life of the plan pursuant to 11 U.S.C. §1325(a)(5) at which time the lien will be discharged, or the secured creditor must be paid the arrearage and regular monthly contract payments through the plan consistent with 11 U.S.C. §1322(b)(2), and at the conclusion of the plan the unsecured portion of the lien will be discharged. Accordingly, it is

ORDERED AND ADJUDGED that the objections are SUSTAINED and the Debtor may file an amended plan within 20 days of entry of this Order surrendering the properties at issue, paying the secured claims in full during the plan term, or providing for payments of principal and interest in the contractual amounts stated in the original note during the life of the plan and such further period of time thereafter as is necessary to pay in full the secured modified claim.

###

Copies furnished to:

Jordan Bublick, Esq.
Jan S. McLaughlin, Esq.
Nancy Herkert, Trustee